1. Whether the said Alexander Millen, having held the said writing obligatory for such a length of time, and having at the same time the estate of the said John, more than sufficient to satisfy the said bond, is such a presumption of payment thereof as to bar the plaintiff's recovery or operate as an extinction of the debt.
2. Does the act of 1715, under all the circumstances of the case, operate as a bar to the plaintiff's recovery?
The case is, that Horniblow, in his lifetime, became indebted to Ramsay by bond bearing date 15 June, 1798. Ramsay died 9 September, 1799, before any payment made on the bond, having made his last will and testament, whereof he appointed Alexander (640) Millen and the present plaintiff the executors, who proved the same. Horniblow died 15 October, 1799, intestate, and administration of his estate was granted to the same Millen and one Blount jointly. That Blount soon after died, and before any part of the bond was paid, and said Millen survived and received assets from Horniblow. In June, 1802, he applied £ 82 13s., and in January, 1803, £ 70, 10s., in part discharge of said bond, and endorsed the same sums thereon as credits. That Millen died in 1807, having in his hands, in money, besides other specific personal property, £ 192 14s. 4d. of the assets of Horniblow, which were sufficient to discharge the balance due on said bond and also the said obligation. That there was no other debt owing by his intestate. That said Millen made a will and appointed executors, who proved the same and delivered to the plaintiff the said bond, and paid to the defendant who *Page 460 
had obtained letters of administration de bonis non of the estate of Horniblow the said sum of £ 192 14s. 4d., and delivered to him the other effects of Horniblow.
The jury found a verdict for the defendant, subject to the opinion of the Court upon such questions as arise out of the foregoing case. And it is contended for the defendant: (1) That by reason of the suspension of the action growing out of the fact that Millen was executor of the creditor and administrator of the debtor, there is an extinguishment (641) of the debt; and, if not, then (2) that the debt is discharged by reason of assets of Horniblow. It is true that a suspension of personal duties by a man's own act will work an entire extinguishment. But the rule is strictly confined to the act of the party to whom the duty belongs really and beneficially. Plow., 36. It would be exceedingly unreasonable of it were otherwise. Accordingly, if a creditor appoint his debtor his executor, the debt is gone, even without proving the will. But if the ordinary appoint the debtor administrator, the debt is not extinguished.
The diversity here appears. In the former case it is the act of the testator; in the latter it is the act of the law. Needham's case, 8 Co., 136. And so, again, the law will not suffer one who is acting in auterdroit to prejudice the principal by a suspension of the means of enforcing a duty. Thus, if a feme executrix of the creditor marry the debtor, the debt survives, upon the death of the husband, against his executors. Cr. Eliz., 114. And, by parity of reasoning, I suppose, upon the death of the feme, the action can be brought by her surviving coexecutor against the surviving husband.
The reason given by Lord Coke for this last case is that if the marriage produced an extinguishment, then there would be a devastavit, which the law will not imply, because it is a wrong. So, again, if the debtor make the obligee's executor his executor, upon the death of him who is executor of both the action survives. 1 Salk., 305. And if the debt is not extinguished, where the obligor makes the obligee's executor his executor it will surely survive when the creditor's executor takes administration of the debtor's estate. 8 Coke, 136. I should, therefore, think that the action might be well supported if there was nothing more in the case. But upon the second question I am of opinion with the defendants, upon the ground that sufficient assets of Horniblow's estate came to the hands of Millen to discharge the debt, and that it was entitled to have them applied in due course of administration. It is not necessary that Millen should have actually, by endorsement on (642) the bond or other similar act, have applied Horniblow's assets *Page 461 
in discharge of this debt in order to its extinguishment. As soon as the assets came to his hands, the law made the application of them, and the debt became extinct instanter.
In Darcy's case, Plowd., the Court mentions a case where an obligee, who was executor of the debtor, sued the heir on the obligation. The defendant pleaded that the plaintiff administered goods to the value of the debt and retained the same sum towards paying himself. The Court said that whether he retained or not was immaterial, as he might have done it, and it was his own folly not to do so. The defendant consequently took issue, that he had administered the goods, not upon the retainer. The reason of that is that the creditor has full satisfaction of his debt by alteration of the property of the assets. And it is upon this ground that the whole doctrine of retainers, so beneficial to executors, is founded. As soon as assets came to his hands, a satisfaction of his debt is effected, and the property of the goods is changed and vested in him, as his own proper goods, by operation of law. If that was not so, they would be assets still, and so liable to suing creditors; which is not the case. And being a creditor in a representative capacity makes no difference. Dorchester v. Webb, Cro. Car., 373. There the plaintiff, as executrix of the obligee, sued the defendant, as one of two joint and several obligors. Plea, that the plaintiff was also executrix of the other obligor. Replication, that the plaintiff had fully administered all the assets of the deceased obligor before the creditor made her executrix, and that, at the time of the death of the creditor, nor at any time since, had any goods of her first testator come to her hands. On demurrer, the replication held good. But the Court said that if there had been assets, the debt would have been extinct. Which shows that where the same person is executor of the creditor and debtor both, he may retain of the assets of the debtor's estate in satisfaction of his debt as executor of the creditor; and that, as he may, he shall do so.
It may be observed that in the above case the debtor's was (643) afterwards made the creditor's executor, and is the converse of the present case. That does not alter it; for the reason of the whole is, that the same person that is to pay, is to receive. But an executor is only liable to pay by reason of having assets. If he hath assets, he is the person to pay, in both instances, whether the obligation to pay precede the right to receive, or vice versa; and if he hath no assets, he is not to pay in any case. It is, therefore, totally immaterial whether he be executor of the debtor before or after his being executor of the creditor. And in Lord Holt's first position, Wankford v. Wankford, 1 Salk, 305, he puts the case of the executors of the obligee (as here) being made executors (here administrators) to the obligor; and, having *Page 462 
assets, the debt is extinct, and the executor cannot sue another obligor in the bond; for having assets amounts to payment. As to the circumstances of part of the assets being specific chattels, that does not alter the case. There is but one exception to the right of the executor to retain so much of the testator's as will satisfy his debt, and that is of lands appointed to be sold by him as executor. Nay's Man c, 47, p. 120. But if that was not the case, he might sell the goods to the value of the debt; and as he might have done it, it is his own fault that he did not. Besides, in all the cases there is no distinction taken as to the kind of assets which being in the hands of the executor will work an extinguishment; but it is said of assets generally, and in these old cases the judges are very scrupulous about laying down general propositions, unless the rules are of general operation.
Wherefore, I am for judgment for the defendant.
The other judges concurred.
NOTE. — See Carroll v. Durham, 23 N.C. 36.
Cited: Eure v. Eure, 14 N.C. 216; Chaffin v. Hanes, 15 N.C. 104;Dozier v. Sanderlin, 18 N.C. 249; Harris v. Harrison, 78 N.C. 209;Ruffin v. Harrison, 81 N.C. 213, 214.
(644)